Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,977-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: MEDICAL REVIEW PANEL
PROCEEDINGS OF STEPHEN BARBER

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. M-374

Honorable Bruce E. Hampton, Judge

* * * * *

MICHAEL J. MESTAYER, APLC
By: Michael J. Mestayer

Counsel for Appellants,
Stephen Barber and
Sheila Barber

CREED & CREED
By: Christian C. Creed

BRADLEY, MURCHISON,
KELLY & SHEA
By: Bruce A. Cranner
    Patrick W. Woolbert

Counsel for Appellees,
Ruston Louisiana
Hospital Company, LLC
d/b/a Northern Louisiana
Medical Center

NELSON, ZENTNER, SARTOR,
& SNELLINGS, LLC
By: F. William Sartor, Jr.

Counsel for Appellee,
Hunter Thomas Christy,
M.D.

HUDSON, POTTS & BERNSTEIN, LLP
By: Gordon L. James
    Donald H. Zeigler, III

Counsel for Appellee,
William Alexander, M.D.

* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.

**THOMPSON, J.**

A patient experienced unfortunate complications and required surgical intervention following what he described as the improper insertion and use of a PICC line that pierced his pericardium. Following hospitalization at two separate treatment facilities, complications resulted, requiring surgical removal of the PICC line at a third hospital. The patient filed a medical malpractice claim, alleging malpractice against the doctor and staff at the first treatment facility that initially placed his PICC line. Over one year later, the patient amended his original complaint, adding the doctor and the second treatment facility, where his PICC line was used to administer contrast medium to perform a CT scan. The doctor and the second treatment facility both filed exceptions of prescription, alleging that the claims against them were prescribed, which were sustained by the trial court. For reasons more fully detailed below, we affirm the trial court's judgment sustaining the exceptions of prescription.

## FACTS AND PROCEDURAL HISTORY

On November 15, 2022, Stephen Barber ("Barber") was admitted to North Louisiana Medical Center ("NLMC") for diverticulitis, which is serious inflammation or infection of the intestines. On November 21, 2022, a Peripherally Inserted Central Catheter ("PICC line") was inserted in a vein in the arm, which is threaded through larger veins until the tip reaches a large vein near the patient's heart. A PICC line allows for administration of medication and for blood draws.

The initial PICC line placement was attempted by a member of the NLMC staff, with a trainee initially misplacing the line. The placement of

the PICC line was later corrected by a qualified staff member. The PICC line placement was ultimately deemed to be in proper placement by Dr. Hunter Christy ("Dr. Christy") while Barber was at NLMC.

On or about November 22, 2022, Barber was transferred to Ruston Regional Specialty Hospital ("Ruston Specialty") for recuperative care. He remained at Ruston Specialty until November 30, 2022. During the course of his treatment at Ruston Specialty, a series of radiological images revealed the PICC line had pierced Barber's pericardium, the sac that surrounds his heart. Barber claimed that antibiotics and other fluids administered through the PICC line were infusing into the area immediately around his heart, causing fluid and blood to surround his heart, increasing pressure and impairing its ability to properly fill and pump blood effectively. This condition is referred to as "pericardial tamponade." Due to the complications from the PICC line placement and use, Barber incurred a pulmonary embolism, was thrust into atrial fibrillations, and suffered anxiety. Barber was transferred to Ochsner LSU Shreveport for prompt surgical removal of the PICC line.

On November 7, 2023, Barber and his wife, Sheila Barber, filed a medical review panel complaint, alleging his vein was pierced during the initial insertion at NLMC, which caused damages. In their original complaint, the Barbers named only NLMC and Dr. Christy as defendants.

It was not until January 9, 2025, 14 months later, that the Barbers filed an amended complaint, adding Ruston Specialty and Dr. William Alexander ("Dr. Alexander") to the pending medical review panel proceeding against

2

the initial radiologist, Dr. Christy,[1] who had originally approved the PICC line placement.

In his amended complaint, Barber alleged that Ruston Specialty and Dr. Alexander were negligent when contrast medium was administered through the PICC line, and they failed to recognize the mispositioned PICC line and prevent the ensuing injury. The amended complaint provides that on December 2, 2024, Barber received the opinion of an unnamed board certified radiologist he had retained as a medical expert, identifying a new theory of why the PICC line pierced his pericardium. Barber asserts that this expert opinion prompted the need to amend the complaint and add additional defendants. Barber's medical expert opined that the puncture of the vein occurred when the unidentified Ruston Specialty radiology technician and Dr. Alexander caused the vein to rupture when they ordered contrast for the CT scan. Barber asserts that the medical expert later revealed through discovery that his vein puncture occurred at Ruston Specialty during "power injection" of contrast medium for a contrast CT scan on November 29, 2022, and not at initial insertion at NLMC as previously asserted. Barber contends the report from his expert witness was the first indication of this new theory of the cause of his injuries and that he could not have known of this conclusion at any time prior to receipt of the report in early December 2024.

Both Dr. Alexander and Ruston Specialty filed separate peremptory exceptions of prescription asserting the claims against them had prescribed, as the complaint was filed more than a year from both (1) the date of the alleged act causing the injury, and (2) the receipt by plaintiff of all medical

---

[1] On June 26, 2025, Barber voluntarily dismissed claims against NLMC.

3

records which were the basis for the allegations. Appellees assert that the theory of recovery based on alleged negligent acts of Ruston Specialty and/or Dr. Anderson should have been known to Barber upon receipt of the medical records and that a complaint should have been filed within one year of that date. On August 11, 2025, the district court conducted a hearing on the exceptions of prescription. After taking the matter under advisement, the district court issued a written ruling[2] and reasons granting the exceptions and dismissing the claims against Ruston Specialty and Dr. Alexander. The district court concluded that the claims against Ruston Specialty and Dr. Alexander were prescribed, having been filed outside of the one-year period for filing such claims, as provided in La. R.S. 9:5628(A). Asserting two assignments of error, Barber now appeals the trial court's ruling in favor of Ruston Specialty and Dr. Alexander.

## DISCUSSION

**Assignment of Error No. 1: The trial court committed manifest error in failing to follow the clear language of the Louisiana Medical Malpractice Act, La. R.S. 40:1231.1, et. seq., and La. R.S. 9:5628 concerning one and three year prescriptive periods for filing claims.**

Barber argues that he was initially advised by his treating physicians of only two possible causes of his injury, neither of which involved Ruston Specialty or Dr. Alexander. Barber asserts that prior to receipt of the opinion of his retained expert on December 2, 2024, he had no means to have earlier discovered that there was this third possible cause of his injury, the November 29, 2022 injection of the contrast medium for the CT scan at Ruston Specialty under the direction of Dr. Alexander. Barber claims the

_____

[2] November 19, 2025.

4

medical records neither reflect the identity of the medical provider who performed the improper action at Ruston Specialty, nor that the improper action ever took place. Barber asserts that this pertinent information was only discoverable in a related civil action against a non-qualified medical care provider.

Barber explains that a medical expert with specialized training in radiology finished an exhaustive review of the medical records and radiology films and provided a basis to make the claims against Ruston Specialty and Dr. Alexander. Barber argues that once the information was discovered in December 2024, the second amendment to the medical review panel claim was timely filed. Barber argues that only a specialized medical professional familiar with the procedures utilized in contrast radiology would have the information to form the basis of this theory of injury to the vein. Barber asserts that the initial claim against the first radiologist was filed within one year of medical care as required by La. R.S. 9:5628(A), the amended claim was filed within one month after the relevant information was discovered, and that both were well within the three-year peremptive period for filing medical malpractice claims. He asserts the exceptions of prescription against Ruston Specialty and Dr. Alexander should not have been sustained by the trial court.

The prescriptive period for medical malpractice actions is set forth in La. R.S. 9:5628(A), which provides:

> No action for damages for injury or death against any physician, […] hospital or nursing home duly licensed under the laws of this state, […] whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the

5

alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

The one-year prescriptive period begins to run on the date that the injured party discovers or should have discovered the facts upon which a reasonable person would conclude that they had been the victim of a tort. When a party has sufficient information to incite curiosity or put a reasonably minded person on guard and call for inquiry, he has the constructive knowledge necessary to start the running of prescription. *Abbott v. Louisiana State Univ. Med. Ctr.-Shreveport*, 35,693 (La. App. 2 Cir. 2/27/02), 811 So. 2d 1107, *writ denied*, 02-0952 (La. 5/31/02), 817 So. 2d 104. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment, and there is no effort by the health care provider to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the cause of action is reasonably knowable to plaintiff. Failure to act by a plaintiff for more than one year under these circumstances is not reasonable. *Abbott, supra.* Appellees assert Barber had all of the medical records relied upon by his recently retained unnamed expert witness for longer than one year prior to asserting claims against them.

The prescriptive period in medical malpractice claims will not begin to run at the earliest possible indication that a patient may have suffered some wrong. *Abbott, supra.*, *Guitreau v. Kucharchuk, M.D.*, 99-2570 (La. 5/16/00), 763 So. 2d 575. Rather, in order for the prescriptive period to

6

commence, the plaintiff must be able to state a cause of action – both a wrongful act and resultant damages. *Guitreau, supra.*

The law of prescription does not require that the patient be informed by a medical practitioner or an attorney of possible malpractice before the prescriptive period begins to run. *Dixon v. Louisiana State University Medical Center*, 33,036 (La. App. 2 Cir. 1/26/00), 750 So. 2d 408, *writ denied*, 00-0627 (La. 4/20/00), 760 So. 2d 350.

When it appears on the face of the petition that prescription has accrued, the plaintiff must allege and prove facts indicating that the injury and its causal connection were not apparent or discoverable until within the year before the suit was filed. *White v. Willis Knighton Medical Center*, 25,575 (La. App. 2 Cir. 2/23/94), 632 So.2d 1198, *writ denied*, 94-1024 (La. 6/17/94), 638 So. 2d 1098.

The record shows that the power injection of contrast medium that Barber claims caused his injury occurred on November 29, 2022. Yet, Barber did not add Ruston Specialty or Dr. Alexander until January 9, 2025, more than two years later. The second amended complaint was filed well outside the one-year prescriptive period. As the claims against Ruston Specialty and Dr. Alexander are prescribed on their face, the burden shifted to Barber to prove the timeliness of his actions.

In response, Barber contends his filings were timely and asserts prescription did not begin to run until December 2, 2024, the date Barber's received information that his consulting radiologist allegedly supported a new and different theory of liability regarding the power injection through the PICC line.

We find that Barber has failed to meet his burden. The trial court correctly rejected the contention that prescription did not begin to run until December 2, 2024, when Barber's consulting radiologist allegedly supported a different theory of liability. Prescription begins when a claimant has actual or constructive knowledge of facts sufficient to excite attention and prompt further injury, not when the claimant later obtains an expert opinion supporting a preferred theory. Barber had sufficient information no later than September 5, 2023, when their counsel obtained Ruston Specialty's medical records and could investigate whether medical treatment there could have contributed to the injury. As such, the one-year prescriptive period would have been triggered no later than that date. Barber's January 9, 2025 amended complaint was untimely.

Barber's unnamed medical professional who informed him of his theory of the alleged cause of the vein puncture in December 2024 does not preserve the untimeliness of adding Dr. Alexander and Ruston Specialty to his medical review panel complaint. The need for an expert to discern a potential claim does not extend the one-year prescriptive period. Importantly, the record shows that Dr. Alexander noted in Barber's discharge papers from Ruston Specialty that a CT scan of the chest had been performed to rule out pulmonary embolus, and the CT scan results showed that Barber's PICC line had migrated into his pericardium. From there, Barber went to Ochsner in Shreveport in case there were issues with removing the PICC line. Clearly, Barber was on notice that medical treatment at Ruston Specialty with Dr. Alexander may have contributed to his injury under his new theory of recovery. As the trial court correctly

8

noted, any reasonable person reviewing the medical records from Ruston Specialty would be placed on notice that any medical action taken regarding Barber's PICC line would be at issue in a complaint regarding the placement and/or use of his PICC line. It is from no later than this point that prescription would begin to run.

Barber's amended complaint against Ruston Specialty and Dr. Alexander was filed more than two years after the date of alleged malpractice, more than a year after receipt of the medical records, and more than one year after the initial complaint alleging medical malpractice against NLMC and Dr. Christy. Accordingly, we find this assignment of error is without merit.

**Assignment of Error No. 2**: **The trial court committed manifest error in failing to follow the clear language of the Louisiana Medical Malpractice Act, La. R.S. 40:1231.1, et. seq., concerning the effect of pending claims against qualified and non-qualified medical providers.**

Barber argues that the initial timely medical review panel request suspended the running of prescription against all qualified and non-qualified health care providers, which include Ruston Specialty and Dr. Alexander. Barber appears to argue that Ruston Specialty and Dr. Alexander are joint and solidary obligors simply because they are health care providers who also treated him. Barber claims the consulting medical expert discovered the third unknown potential cause in December 2024, and only then did prescription begin to run against Ruston Specialty and Dr. Alexander. Barber asserts that joint and solidary negligence does not have to be specifically pled at the medical review panel stage of the proceedings.

La. R.S. 40:1231.8(A)(2)(a) provides that the filing of a request for review with the medical review panel suspends prescription against joint and

9

solidary obligors and joint tortfeasors to the same extent as against the party who is the subject of the request for review. When a plaintiff's basis for claiming suspension of prescription is the alleged solidary liability of two or more parties, the plaintiff bears the burden of proving that solidary relationship. In the absence of any such allegations and/or proof, the plaintiff fails to meet their burden of proving a suspension of prescription based on solidary liability. *St. Romain v. Luker*, 00-1366 (La. App. 1 Cir. 11/9/01), 804 So. 2d 85, *writ denied*, 02-0336 (La. 4/19/02), 813 So. 2d 1083.

Barber fails to prove that the earlier complaint filed against NLMC and Dr. Christy suspended prescription against Ruston Specialty or Dr. Alexander. There are no allegations in the amended complaint that a solidary relationship between Dr. Christy, Dr. Alexander, and/or Ruston Specialty existed, or that Dr. Christy's actions somehow contributed to the alleged acts of malpractice by Dr. Alexander at Ruston Specialty. Therefore, because Barber neither alleged nor proved that Ruston Specialty and Dr. Christy are jointly or solidarily liable, he cannot show that prescription as to Ruston Specialty is suspended. Additionally, Barber voluntarily dismissed NLMC from the medical review panel proceeding. If Barber admits NLMC is not liable, there is no factual or legal basis to assert joint liability between Dr. Alexander (at Ruston Specialty) and Dr. Christy (at NLMC). Accordingly, this assignment of error is likewise without merit.

**CONCLUSION**

For the foregoing reasons, the judgment sustaining Ruston Regional Specialty Hospital's and Dr. William Alexander's peremptory exceptions of

10

prescription, and dismissing Barbers' claims against them, is affirmed.

Costs of this appeal are assessed to Stephen and Sheila Barber.

**AFFIRMED.**